# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK MAHON,**<br><br>Plaintiff,<br><br>v.<br><br>**MAINSAIL LLC, ET AL.,**<br><br>Defendants. | **ORDER RE: MOTIONS TO DISMISS**<br><br>Case No. 20-cv-01523-YGR<br><br>Dkt. No. 47 |
| v.<br><br>**YOUTUBE LLC, ET AL.,**<br><br>Defendants. | Case No. 20-cv-01525-YGR<br><br>Dkt. No. 44 |
| v.<br><br>**ALPHABET INC., ET AL.,**<br><br>Defendants. | Case No. 20-cv-01530-YGR<br><br>Dkt. No. 43 |
| v.<br><br>**APPLE INC., ET AL.,**<br><br>Defendants. | Case No. 20-cv-01534-YGR<br><br>Dkt. No. 50 |

Plaintiff Mark Mahon brings five copyright infringement actions, alleging that each defendant infringes Mahon's copyrights in the motion picture and screenplay titled "Strength and Honor." In a previous omnibus order, the Court dismissed the complaints against YouTube and Alphabet and dismissed in part the claims against Mainsail and Entertainment One, as well as those against Apple Distribution International Ltd. ("ADI"), all with leave to amend. (*See* Dkt. No. 44 ("Omnibus Order") in Case no. 20-1523.) The Court further granted Mahon leave to conduct jurisdictional discovery against Entertainment One. Mahon has filed amended complaints in the remaining four cases. Now before the Court are the four defendants' renewed motions to

1  dismiss. Mainsail, YouTube, and Alphabet move to dismiss for failure to state a claim under

2  Federal Rule of Civil Procedure 12(b)(6), and ADI moves to dismiss for lack of personal

3  jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

4  Having considered the papers and pleadings in this action, and the arguments made at the

5  hearing held on November 3, 2020, the Court **GRANTS IN PART** and **DENIES IN PART** Mainsail's

6  and YouTube's motions and **GRANTS** Alphabet's and Apple's motions.

**I.   BACKGROUND**

The nature of these cases was previously described, and the Court does not repeat the allegations in full here.[1] (*See* Omnibus Order at 2:11-4:24.)

In summary, Mahon is an independent Irish filmmaker who created the film "Strength and Honor" (the "Film") in 2005. (Mainsail SAC ¶¶ 7, 23.) Mahon entered into agreement with Mainsail[2] to distribute the Film in 2009. (*Id*. ¶ 27.) As part of the agreement, Mahon sent master copies of the Film to Visual Data Media Services, Inc., which is based in Burbank, California. (*Id*. ¶ 27.) However, in January 2010, the Film was released with unauthorized covers and trailers, which Mahon believes violated the agreement. (*Id*. ¶ 28.) Mahon immediately sent "cease and desist" letters to Mainsail, instructing it to remove the Film from distribution, and eventually filed suit in the Los Angeles Superior Court. (*Id*. ¶¶ 29-30.) Mahon also sent similar letters to Entertainment One, which had subcontracted distribution from Mainsail. (*Id*. ¶ 31.)

During the subsequent exchange, Mainsail allegedly offered, and then repeatedly delayed, mediation until two years had passed. (*Id*. ¶¶ 35-40.) When Mahon finally filed suit, the Superior Court found Mahon's claims time-barred, except for his claim for accounting. (*Id*. ¶¶ 42; Case No. 20-1523, Dkt. No 31-32.) During trial on the accounting claim, Mainsail introduced evidence

---

[1] The Court references the relevant paragraph numbers of the case with the lowest filing number. *See Mahon v. Mainsail LLC*, No. 20-cv-01523, Dkt. No. 45 ("Mainsail SAC."). Where, and when appropriate, direct references to the other complaints are made. *See Mahon v. YouTube LLC*, No. 20-cv-1525, Dkt. No. 42 ("YouTube SAC."); *Mahon v. Alphabet Inc.*, No. 20-cv-1530, Dkt. No. 41 ("Alphabet SAC."); *Mahon v. Apple Inc.*, No. 20-1534, Dkt. No. 46 ("Apple SAC.").

[2] The Mainsail defendants include Mainsail LLC, Shoreline Entertainment, Inc., Sam Eigen, Morris Ruskin, and Does 1 through 21 (collectively, "Mainsail").

that Mahon never delivered the Film and that it had stopped all licensing after receiving Mahon's "cease and desist" letter, which allegedly surprised Mahon and to which Mahon had no response. (Mainsail SAC ¶¶ 44, 87-88.) Accordingly, Mahon recovered nothing. (*Id*. ¶ 46.)

Notwithstanding the Superior Court's findings, the Film continued to be distributed around the world, which Mahon claims could only occur based on master copies provided to Mainsail through Visual Data. (*Id*. ¶¶ 44, 47.) In December 2019, Visual Data revealed to Mahon, for the first time, that it had shipped copies of the Film to companies around the world, on Mainsail's instruction, after Mahon's "cease and desist" letter. (*Id*. ¶¶ 56, 65; Dkt. No. 19-5 at 55, 61; Dkt. No. 45-3 at 2.) Visual Data's records show that it shipped DVDs of the Film directly to Mainsail in 2017.[3] (Dkt. No. 19-5 at 61.)

To document his claims, Mahon purchased the Film from YouTube, Google Play, and iTunes in December 2019, and then sent those companies "cease and desist" letters. (YouTube SAC ¶¶ 32, 34; Alphabet SAC ¶¶ 33, 35; Apple SAC ¶¶ 35, 37.) The companies took down the Film, and both Google and Apple identified Entertainment One as the provider of their license and copy. (Case No. 20-1530, Dkt. No. 16-5 at 39; Apple SAC ¶ 41; Case No. 20-1534, Dkt. No. 15-5 at 45.) Entertainment One reached out to Mahon directly in January 2020, stating:

> As you might recall, Entertainment One were granted all linear distribution rights, which included 'all means of download and streaming,' in this film by way of an agreement with Mainsail LLC on behalf of [Mahon's production company] dated 16 May 2009. Those rights have been granted for a fifteen year term from early 2010. As such, we have been and remain the exclusive licensee of this title for a further five years. Please be re-assured that we have authorised the likes of iTunes, Google and other digital platforms in the UK and Eire to offer the title for sale and they have not been infringing the copyright of this film.

(Case No. 20-1530, Dkt. No. 16-5 at 33.) Mahon filed suit against all defendants shortly after.[4]

---

[3] Mahon also received a royalty report from Entertainment One showing around $10,000 in royalties owed for Q4 2017 in February 2018. (Mainsail SAC ¶ 70.) However, Mahon claims he believed the report was in error and did not pursue his claims at the time.

[4] The Court omits details regarding Mahon's production company, copyright registration and assignment history, and appeals in the California state court litigation, which are not directly relevant to the instant motions. For ease of reference, the Court uses "Mahon" to refer both to plaintiff in his individual capacity and to his wholly-owned production company, Maron Pictures,

**II.     LEGAL STANDARD**

   **A.     Rule 12(b)(2)**

Rule 12(b)(2) places the burden on the plaintiff to demonstrate that the court has personal jurisdiction over the defendants. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A Rule 12(b)(2) motion to dismiss may test either plaintiff's allegations of jurisdiction or the facts supporting those allegations. Where defendants' motion rests on the written materials, rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Although plaintiff cannot rest on conclusions, "uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir 2011). The court does not assume the truth of allegations contradicted by affidavit, but conflicts among parties' affidavits are resolved in plaintiff's favor. *Id.*; *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996) (citation omitted).

Substantively, "[t]here are two limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process." *Sher*, 911 F.2d at 1360. California's long arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the due process clause of the United States Constitution. Cal. Civ. P. Code § 410.10. In addition, the federal long-arm statute—codified as Federal Rule of Civil Procedure 4(k)—allows a court to exercise jurisdiction over "any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state" through service of process, as long as doing so complies with due process. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

   **B.     Rule 12(b)(6)**

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

---

through which Mahon acted until 2015. (*See* Mainsail SAC ¶ 25.)

4

1  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica
2  Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The complaint must plead "enough facts to state
3  a claim [for] relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
4  (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the
5  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
6  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the facts alleged do not support a reasonable
7  inference of liability, stronger than a mere possibility, the claim must be dismissed.  *Id*. at 678-79;
8  *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is
9  not required to accept as true "allegations that are merely conclusory, unwarranted deductions of
10 fact, or unreasonable inferences").

11 If a court dismisses a complaint, it should give leave to amend unless "the pleading could
12 not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal.
13 Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### III.  MAINSAIL'S MOTION TO DISMISS

Mahon asserts claims for direct and contributory copyright infringement, illicit trafficking in counterfeit labels, fraud, and conversion against Mainsail.  The Court previously found that Mahon adequately alleged direct and contributory copyright infringement, but dismissed the illicit trafficking claims as time-barred, the fraud claim as insufficiently pled, and the conversion claim as preempted by the Copyright Act.  Mahon amended the complaint reasserting the claims, and Mainsail moves to dismiss on similar grounds.

#### A.  Contributory Copyright Infringement

The Court has already found Mahon's contributory infringement allegations sufficient. Mainsail therefore did not have leave to reassert its challenge to this claim, especially given the nature of the new allegations.  The Court addresses Mainsail's motion nonetheless.

Contributory copyright infringement occurs when a party "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement."  *Perfect 10 v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795 (9th Cir. 2007).  "Material contribution" may involve, for example, providing materials or services that help another infringe.  *See Fonovisa,*

*Inc. v. Cherry Auction, Inc.*, 76 F.4f 259, 264 (9th Cir. 1996). Inducement may involve actively encouraging others to infringe, such as by providing instructions. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-67 (2005).

In the previous motion to dismiss order, the Court found that Mahon adequately alleged contributorily infringement on three grounds. First, Mahon claims that he does not know the exact role of each Mainsail defendant and seeks to preserve his right to recover from all of them. Second, Mahon alleged, in other complaints, that Entertainment One represented to him that it distributed the Film to Apple, YouTube, and Google pursuant to its contract with Mainsail. The Court took judicial notice of these allegations and found that if Mainsail licensed and provided the appearance of right to Entertainment One's infringement, it may be liable as a contributory infringer. Finally, Mahon alleged that Mainsail directed Visual Data to distribute the Film. The Court found each of these grounds sufficient to state a claim for contributory infringement, but advised Mahon to include the additional allegations in the amended complaint "to make explicit the link." (Omnibus Order at 10:16-11:11.)

In response, Mahon added allegations that (i) Mainsail "directed Visual Data to distribute and export the Motion Picture from inside California and the United States," (ii) Mainsail distributed master copies of the Film "to numerous companies around the world . . . , who in turn also distributed the counterfeit copies to other companies," (ii) Mainsail may have "knowingly allowed Entertainment One to perform distribution . . . and contributed to this infringement by providing an appearance of right," and (iv) Mahon received a royalty report from Entertainment One, which shows that Mainsail "continued to avail itself of the benefit of the distribution . . . and gave the appearance of right." (Mainsail SAC ¶¶ 68, 69, 70.)

Mainsail now claims that these allegations are insufficiently explicit and overspeculative. Mainsail's argument is meritless. Mahon attaches an email to the complaint where Visual Data expressly confirms that it distributed copies of the Film on instruction from Mainsail. (Dkt. No. 45-3 at 2.) This email is sufficiently explicit.[5] Moreover, Mahon includes detailed factual

---

[5] During the hearing for these motions, Mainsail argued that Visual Data's report is insufficient because it does not show copying. The Court reminds Mainsail that distributing—or,

6

allegations regarding Mainsail's sublicensing of the Film's distribution rights to others. Courts routinely find a party who knowingly licenses others' infringement liable as a contributory infringer. *See Ryan v. Editions Ltd. W., Inc.*, 417 F. App'x 699, 700-01 (9th Cir. 2011) (finding publisher who licensed another's unauthorized art reproduction liable); *Paramount Pictures Corp. v. Int'l Media Films Inc.*, No. CV 11-09112 SJO (AJWx), 2013 WL 3215189, at *13 (C.D. Cal. June 12, 2013) (finding contributory infringement where defendant licensed other companies to distribute the film *La Dolca Vita*); *see also* 17 U.S.C. § 106 (granting copyright owners exclusive right to do *or to authorize* the listed actions).[6] Although Mahon fails to reallege the specifics of other defendants' direct infringement in the Mainsail complaint, the Court finds the allegation that Mainsail distributed the film to other companies, who "in turn distributed the counterfeits to other companies," plausible and sufficient.[7]

The gravamen of Mahon's complaint is that despite years-long litigation, Mainsail continues to license and distribute the Film, without paying Mahon royalties, confident that Mahon will not be able to enforce his claims. Mainsail's conduct allegedly caused not only its own infringement, but the infringement of several other companies that inadvertently distributed the Film without authorization. Mahon plausibly alleges that Mainsail knew that its conduct was unauthorized, given its representations to the state court disavowing any licensing or business dealings after 2010. In light of these alleged facts, Mahon states a plausible claim for Mainsail's

---

in this case, directing another party to distribute—an existing copy of a work without authorization violates the exclusive rights of copyright. *See* 17 U.S.C. § 106(3).

[6] Indeed, Congress added the words "to authorize" to the Copyright Act to confirm that authorization of others' infringing conduct suffices for contributory liability. *See Subafilms, Ltd. v. MGM-Pathe Commn's Co.*, 24 F.3d 1088, 1092-93 (9th Cir. 1994). The legislative history shows that the amendment meant to cover "a person who lawfully acquires an authorized copy of a motion picture" and "engages in the business of renting it to others for purposes of unauthorized public performance." *Id.* at 1093 (quoting H.R. Rep. No. 94-1476 at 61 (1976)).

[7] By "explicit link," the Court referred to the allegations that YouTube, Google, and Apple distributed the Film in 2019 pursuant to license from Entertainment One, which identified Mainsail as the source of its license. In order to prove Mainsail's contributory infringement, Mahon must show that the other defendants directly infringed his copyrights. *See Subafilms, Ltd. v. MGM-Pathe Commn's Co.*, 24 F.3d 1088, 1092 (9th Cir. 1994). The challenge here will be to show that YouTube, Google, Apple, or Entertainment One distributed the Film or committed another directly infringing act in the United States.

1  contributory infringement based on material contribution (through distribution) and inducement
2  (through licensing) of Visual Data's and Entertainment One's direct infringement, with knowledge
3  that these companies' activities may violate Mahon's copyrights.

4  Moreover, given the liberal standard for construing pro se complaints, the Court finds that
5  Mahon states a claim for vicarious and willful copyright infringement.  *See Haines v. Kerner*, 404
6  U.S. 519, 520 (1972); *Balisteri v. Pacifica Police Dept.*, 901 F.3d 696, 699 (9th Cir. 1990).
7  Vicarious infringement occurs where defendant (1) has the right and ability to supervise infringing
8  conduct, and (2) receives a direct financial benefit from the infringing activity.  *Visa*, 494 F.3d at
9  802.  Here, Mahon alleges that Mainsail "failed to exercise their right and ability to supervise
10 persons within their control to prevent infringement, . . . with intent to further their own financial
11 interests."  (Mainsail SAC ¶ 71.)  This allegation is plausible because Mahon alleges that Mainsail
12 profited from its licensing activity.  (*Id.* ¶ 53.)  While the extent of Mainsail's control over its
13 licensees depends on the nature of the contracts, the Court finds plausible that Mainsail could have
14 stopped their infringement by informing the licensees of its own lack of authorization.

15 Willful infringement requires "intentional" or "reckless" behavior.  *In re Barboza*, 545
16 F.3d 702, 707 (9th Cir. 2008).  To establish willful infringement, plaintiff must show "(1) that the
17 defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the
18 result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  *Louis*
19 *Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (citation
20 omitted).  Here, Mahon alleges that Mainsail acted "with intent to further their own financial
21 interests with the willful infringement of" Mahon's rights.  (Mainsail SAC ¶ 71.)  This allegation
22 is plausible because Mahon alleges facts to show that Mainsail knew or must have known that it
23 had no right to license or distribute the Film, but did so anyway.  Mahon thus states a plausible
24 claim for willful infringement.[8]

---

[8] Although Mahon cites 17 U.S.C. § 506 in relation to willful infringement, that statute provides for criminal liability and cannot be enforced by a private party.  However, to the extent that Mahon fails to demonstrate entitlement to actual damages and defendants' profits (for reasons of extraterritoriality or otherwise), he may ask the Court for statutory damages of up to $150,000 under 17 U.S.C. § 503(c) if he proves willful infringement.  *See Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019).  The Court construes this reference as one for willful infringement

8

Accordingly, the Court **DENIES** Mainsail's motion on the contributory infringement claim and further construes the claims to include a sufficient basis for vicarious and willful infringement. In amending the complaint, Mahon should make those separate claims.

### B. Illicit Trafficking

In the previous motion to dismiss order, the Court found that distribution of unauthorized posters states a claim for illicit trafficking under 18 U.S.C. § 2318, but that Mahon failed to allege any trafficking act by Mainsail within the three-year statute of limitations. In response, Mahon added allegations that Mainsail's trafficking "is clearly evident by purchases from iTunes, YouTube and Google Play in 2019," which were "still using the counterfeit copies and covers that were provided to them by Entertainment One and other distributors via [Mainsail]." (Mainsail SAC ¶ 78.) Mahon further seeks an extension of the statute of limitations under the continuous accrual, separate accrual, and equitable tolling doctrines.

The Court has already explained that Mahon cannot succeed under continuous or separate accrual doctrines (or the discovery rule) because he alleges that he discovered Mainsail's label trafficking in 2010.[9] (*See* Omnibus Order at 15:20-17:6.) As to equitable tolling, a plaintiff that seeks equitable tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGulielmo*, 544 U.S. 408, 418 (2005); *Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020) (en banc). Claims may be equitably tolled while a plaintiff pursues a state court action on the same claims. *See Burnett v. N. Y. Cent. RR. Co.*, 380 U.S. 424, 434-35 (1965) (tolling claims where plaintiff brought a timely state court action that was dismissed for improper venue); *Oltman v. Holland Am. Line, Inc.*, 538 F.3d 1271, 1280 (9th Cir. 2008) (same for claims dismissed under forum selection clause). However, in this circuit, the state court action must be "the case at bar and not merely a related action on the same facts." *See Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 240-41 (9th Cir. 1987); *see also*

---

under the civil rubric, as opposed to the criminal statute.

[9] As explained, Mahon cannot avail himself of continuous accrual unless the last act of the violation occurred within the statutory time period.

9

1   *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).  Here, while Mahon may have

2   diligently pursued the state court action, his claims were different from those asserted here, and

3   thus cannot create equitable tolling.[10]  (*See* Mainsail SAC ¶ 40.)

4         Thus, Mahon must allege an act of trafficking in counterfeit labels by Mainsail which he

5   discovered in the last three years.  *See* 18 U.S.C. § 2318(6).  Mahon fails to do so.  Although he

6   adds allegations that unauthorized covers shown by YouTube, Apple, and Alphabet came from

7   Mainsail, that does not establish that Mainsail *trafficked* in those covers *in the last three years*.

8   (This confusion may stem from unclear wording in the Court's last order.)  In other words, Mahon

9   must allege that Mainsail actually trafficked in labels within the time period.  While this may not

10   be a difficult standard—the statute defines "trafficking" to include even possessing counterfeit

11   labels with intent to transport—the allegations are nevertheless missing.  18 U.S.C. § 2320(f)(5).

12         Accordingly, the Court **GRANTS** Mainsail's motion to dismiss the illicit trafficking claims.

13   Mahon may amend the complaint if he can allege, in good faith, that Mainsail possessed or

14   transferred counterfeit labels within the last three years.  Otherwise, should discovery uncover

15   currently unknown facts that Mainsail has done so, Mahon may seek leave from the Court to add

16   the illicit trafficking claim back to the complaint, any time before trial, pursuant to the

17   requirements of Federal Rule of Civil Procedure 15 which include diligence and a lack of

18   prejudice.  *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (noting that courts grant

19   leave to amend complaints before trial "with extreme liberality").[11]

---

[10] The Court does not decide whether Mahon pursued his claims diligently, but notes that the Superior Court found his claims time-barred due to delay after Mainsail stopped cooperating with mediation.  (*See* Dkt. Nos. 31-32, 31-19.)  The Court further notes that California standards for equitable tolling do not apply to Mahon's federal law claims.  Although California courts allow tolling while plaintiff pursues one of several available legal remedies, the Ninth Circuit has not articulated a similar standard.  *See McDonald v. Antelope Valley Comm. Col. Dist.*, 45 Cal. 4th 88, 100 (2008).

[11] Accordingly, Mahon is advised not to delay seeking leave to amend if discovery shows that Mainsail trafficked in counterfeit labels beyond the currently known events.  Leave to amend may be denied if Mahon is not diligent or if amendment would prejudice defendants.  *See Aspeon*, 316 F.3d at 1052.  Given the discovery rule, Mahon may seek to proceed on any currently-unknown label trafficking, regardless of whether it occurred in the last three years.

**C.      Fraud**

Mahon brings a common law fraud claim under California law. The Court has previously dismissed Mahon's claims sounding in fraud for lack of particularized allegations under Rule 9. (Omnibus Order at 17:7-18:4.) In response, Mahon added allegations that Mainsail committed fraud in four instances.[12] First, Mainsail allegedly represented to the Los Angeles Superior Court that Mahon never made a full delivery of the Film. (Mainsail SAC ¶ 87.) Second, Mainsail allegedly testified in the state court action that Mainsail stopped all licensing activity after receiving Mahon's "cease and desist" letter. (*Id.* ¶ 88.) Third, Mainsail allegedly removed master copies of the Film from Visual Data in 2017. (*Id.* ¶ 90.)

As to the first two instances, the Court finds that they constitute inactionable "intrinsic" fraud. Under California law, "[t]he rule is that fraud internal to the adversary proceeding, such as perjury committed during trial or error or mistake during the trial, is intrinsic and is not a basis for relief" but "fraud that prevented the trial of a claim or prevented the defrauded party from getting into court at all, is intrinsic to the proceeding and is a basis for relief." *In re Marriage of Brennan*, 124 Cal. App. 3d 598, 604 (1981). The purpose of this distinction is to avoid "collateral" attacks on final judgments. *Id.* Thus, the trial is "[plaintiff's] opportunity for making the truth appear" and if "unfortunately, he fails, being overborne by perjured testimony, . . . and the judgment is affirmed on appeal, he is without remedy." *Id.* at 605 (quoting *Pico v. Cohn*, 91 Cal. 129, 133-34 (1891). Generally, "the introduction of perjured testimony or false documents, or the concealment or suppression of material evidence is deemed intrinsic fraud." *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 27 (2002).

Here, Mahon litigated his claims extensively and received a final judgment that was affirmed on appeal. (*See* Mainsail SAC ¶¶ 40-55.) Mahon's alleged surprise at Mainsail's testimony suggests that he did not take discovery of Mainsail's case. While unfortunate, if true,

---

[12] The complaint states four "counts," but two of them are duplicative as based on the same conduct but different facts that demonstrate falsity. (*See* Mainsail SAC ¶¶ 87, 88.) To the extent that the allegation in paragraph 89 relates to nondisclosure of Entertainment One's distribution, Mahon may amend the complaint to clarify that he is proceeding on an omission theory, consistent with requirements outlined in this Order for the Visual Data allegations.

11

1    for Mahon, it is not a ground for a collateral attack under any circumstance. *See Heyman v.*

2    *Franchise Mortgage Acceptance Corp.*, 107 Cal. App. 4th 921, 926 (2003); *see also Home Ins.*, 96

3    Cal. App. 4th at 27 (noting that "[a] reasonable investigation and use of discovery would have

4    disclosed" the concealed facts). These instances cannot support a fraud claim as a matter if law.

5           As to the third instance, Mahon proceeds on an omission theory of fraud. Generally, to

6    state a claim for fraud or deceit based on concealment under California law, plaintiff must allege

7    that (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty

8    to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact

9    with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and

10   would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a

11   result of the concealment or suppression of fact, the plaintiff sustained damage.[13] *Boschma v.*

12   *Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011).

13          An actionable omission or nondisclosure occurs in four circumstances, namely where the

14   defendant: (i) is in a fiduciary relationship with the plaintiff, (ii) has exclusive knowledge of

15   material facts not known to the plaintiff, (iii) actively conceals a material fact from the plaintiff, or

16   (iv) makes partial representations while suppressing material facts. *LiMandri v. Judkins*, 52 Cal.

17   App. 4th 326, 336-37 (1997). Each of these circumstances "presupposes the existence of some . . .

18   relationship between the plaintiff and defendant in which a duty to disclose can arise." *Id*. Any

19   relationship between the parties to a transaction may create a duty to disclose. *Id.* at 337; *see also*

20   *Warner Costr. Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970) (finding that exclusive knowledge,

21   active concealment, and partial representations create a duty to disclose in the absence of fiduciary

22   relationships for a concealment claim).

23          Here, Mahon alleges a contractual relationship with Mainsail (through Maron Pictures),

24   which may create a duty to disclose. *See LiMandri*, 52 Cal. App. 4th at 337. Furthermore, Mahon

25   alleges that Mainsail had a contractual arrangement with Visual Data to prevent it from disclosing

---

[13] An alternative formulation for fraud under California law requires plaintiff to allege "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

its distribution of Film copies, which plausibly constitutes "exclusive knowledge of material facts" or "active concealment." (*See* Mainsail SAC ¶ 38 (alleging that Mahon made requests for information from Mainsail that were "refused due to Visual Data's contractual arrangements with" Mainsail).) In these circumstances, Mainsail's nondisclosure of its instruction to Visual Data to send it master copies of the Film in 2017 plausibly constitutes an actionable omission because Mainsail had a contractual duty to pay Mahon revenues from its activities and concealed facts that would have shown its failure to do so.[14] (*See id.* ¶¶ 27, 38, 41; Dkt No. 45-3.)

Furthermore, Mahon sufficiently pleads intent to defraud by stating that Mainsail acted "with the intent to mislead in order to avoid their own legal, financial and moral obligations." (*Id*. ¶ 91) However, Mahon fails to plead reliance. In the context of a fraudulent omission claim, reliance can be established by showing that "had the omitted information been disclosed, the plaintiff would have been aware of it and behaved differently." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1193-94 (2014) (internal brackets omitted) (quoting *Boschma*, 198 Cal. App. 4th at 250). Here, Mahon does not allege that he would have behaved differently had he known that Visual Data provided copies of the Film to Mainsail in 2017.[15] Because Mahon does not allege reliance, he also fails to allege an injury that he incurred from the reliance.

Accordingly, the Court **GRANTS** Mainsail's motion to dismiss the fraud claim, with leave to amend to add allegations of reliance—i.e., that Mahon would have acted differently had he known of Visual Data's 2017 distribution to Mainsail. In the Court's view, if Mahon alleges reliance, the complaint will state a plausible claim for fraud.

---

[14] Moreover, while Mainsail's representations to the Superior Court are not themselves actionable, the Court questions whether they constitute a "partial representation" that would have obligated Mainsail to inform Mahon that it had resumed distribution in 2017. *See Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004) ("Even where no duty to disclose would otherwise exist, 'where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated.'" (citation omitted)).

[15] Mainsail argues that Mahon knew of Mainsail's distribution because he sued Mainsail for accounting based on that distribution. However, while Mahon may have had general knowledge, he may have still acted differently if he had knowledge of the *specific* distribution listed in Visual Data's report, which was allegedly concealed from him until 2019.

**D.     Conversion**

In the previous motion to dismiss order, the Court dismissed Mahon's conversion claim as preempted by the Copyright Act because it was based solely on conversion of intangible property (copyrights). The Court noted, however, that "claims for conversion of intangible property that includes an 'extra element,' such as demand for return of tangible property, is not preempted." (Omnibus Order at 25:1-14); *see Ashakyan v. X17, Inc.*, No. CV 16-04305 TJH (RAOx), 2017 WL 8181026, at *3 (C.D. Cal. May 30, 2017); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001). In response, Mahon added allegations that Mainsail obtained master copies of the Film (DVDs) from Visual Data in 2017 and never returned them. (Mainsail SAC ¶ 101; Dkt. No. 45-3.) Accordingly, Mahon stated a claim for an "extra element" and may seek to recover the physical property from Mainsail.[16]

Mainsail nevertheless argues that Mahon fails to state a claim for conversion because Maron Pictures purportedly authorized Mainsail's use of the master copies. Mainsail fails to persuade. Even if Mahon (through his production company, Maron Pictures) initially authorized Mainsail to use master copies in 2010, it strains credulity that Mainsail could have innocently relied on that authorization in 2017, after years of litigation and numerous "cease and desist" letters from the company. Visual Data's records, attached to Mahon's pleadings, clearly list Maron Pictures as the owner of the copies.[17] (Dkt. No. 19-4.) The Court fails to see how Visual Data's lawful possession could have extended to Mainsail. The Court also fails to see any law, including the cases cited by Mainsail, that requires Mahon to have asked Mainsail for return of the property before filing his suit.

Accordingly, the Court **DENIES** Mainsail's motion to dismiss the conversion claim.

---

[16] Mahon's claims for damages, including recovery of royalties listed in the Entertainment One royalty report, are coextensive with the copyright claims and do not state a separate claim. *See Patnaik v. Hearst Corp.*, CV 14-05158 BRO (Ex), 2015 WL 12746704, at *8-9 (C.D. Cal. Jan. 7, 2015). Mahon may, of course, still seek to recover those royalties under copyright law.

[17] Mainsail claims that Maron Pictures, not Mahon, owns the master copies. At this stage, the Court finds Mahon's allegations that he paid for the master copies sufficient to allege that he owns the master copies. (Mainsail SAC ¶ 100.)

14

\*\*\*

For the foregoing reasons, the Court **GRANTS** Mainsail's motion to dismiss the illicit trafficking and fraud claims, with leave to amend, but **DENIES** the motion as to contributory copyright infringement and conversion.

## IV.  YOUTUBE'S MOTION TO DISMISS

Mahon asserts claims for direct and contributory copyright infringement against YouTube.[18]  The Court previously dismissed these claims because each alleged act of copyright infringement was extraterritorial—*i.e.*, Mahon only alleged that YouTube distributed the Film in Ireland, not the United States.  In response, Mahon added allegations that YouTube distributed and exported copies of the Film abroad from its headquarters in California.  (YouTube SAC ¶ 50.) YouTube moves to dismiss on the same grounds.

### A.  Direct Copyright Infringement

The Copyright Act does not apply extraterritorially.  *L.A. News Serv. v. Reuters Television Int'l, Ltd. ("Reuters III")*, 149 F.3d 987, 990 (9th Cir. 1998).  Accordingly, "infringing actions that take place entirely outside of the United States are not actionable."  *Subafilms*, 24 F.3d at 1091 (citation omitted).  However, where an infringing act is completed within the United States, the copyright holder may recover the infringer's profits (but not actual damages) from subsequent exploitation abroad.  *Reuters III*, 149 F.3d at 992; *L.A. News Serv. v. Reuters Television Int'l (USA) Ltd. ("Reuters V")*, 340 F.3d 926, 931 (9th Cir. 2003).

Mahon alleges that he purchased a copy of the Film from YouTube in Ireland in December 2019.  (YouTube SAC ¶ 32.)  The receipt shows payment in euros; the address is in Cork, Ireland; and Mahon's letter to YouTube states that the Film was available "in Ireland, the United Kingdom and Europe."  (Dkt. No. 16-5 at 12, 14, 24.)  However, Mahon also alleges facts to suggest that YouTube commingles its U.S. and Irish operations, such that the Film copy may have originated

---

[18] The YouTube defendants include YouTube LLC., Google LLC, d/b/a YouTube, and Does 1-12.  YouTube disputes that Google is "doing business as" ("d/b/a") YouTube, arguing that it is the parent company instead, but does not move to dismiss.  Google LLC is also named in the Alphabet complaint.  The parties shall meet and confer to determine whether this entity is properly named and shall attempt to resolve the issue by way of stipulation.

from servers in the United States. For instance, Mahon alleges that his proof of purchase lists YouTube's California address, not its address in Ireland. (YouTube SAC ¶ 32.) Mahon also alleges generally that YouTube "distributed/exported [the Film] through their digital platforms around the world from California." (*Id.* ¶ 50.) Last, Mahon alleges that YouTube is "an American video-sharing platform" based in San Bruno, California. (*Id*. ¶ 7.)

Not knowing the structure of YouTube's servers, it is difficult to conclude that these allegations are implausible. YouTube argues that the allegations are conclusory, but the Court doubts whether anyone outside of YouTube has a better sense of YouTube's internal distribution process. If copyright infringement lay solely in distribution, the Court might conclude that no act is "completed" in the United States for purposes of infringement. *See Allarcom Pay Television, Ltd. v. Gen. Instr. Corp.*, 69 F.3d 381, 387 (9th Cir. 1995). However, under 2008 amendments to the Copyright Act, copyright infringement may lie in exportation alone—as long as the exported copy was made through infringement—even if the copy is sold abroad. *See* 17 U.S.C. § 602(a)(2). Given that YouTube alone would know the location of its servers, and the plausibility that they reside in the United States, the Court does not dismiss the direct infringement claim at this stage.

### B. Contributory Copyright Infringement

Mahon also alleges contributory copyright infringement. However, he pleads no facts to suggest that YouTube contributed to any other party's direct infringement. Accordingly, this claim is dismissed for failure to allege supporting facts.

\*\*\*

For the foregoing reasons, the Court **DENIES** the motion as to the direct infringement claim and **GRANTS** the motion as to the contributory infringement claim. Given the lack of proffer that leave would be fruitful, no leave to amend is granted. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014). Since there are no jurisdictional issues raised, jurisdictional discovery would not cure the defects here.

//

### V. ALPHABET'S MOTION TO DISMISS

Alphabet moves to dismiss Mahon's copyright infringement claims on similar grounds as YouTube.[19] In addition, Alphabet moves to dismiss Mahon's claims against Alphabet and Google Play for failure to plead any facts against them.

#### A. Direct Copyright Infringement

Mahon's allegations against Alphabet are similar to those against YouTube, except that they lack allegations of commingling. Mahon alleges that he purchased the Film from Google Play in Ireland in December 2019. (Alphabet SAC ¶ 33.) However, Mahon alleges no facts to link his Google Play purchase in Ireland to Alphabet's operation in the United States. While Alphabet allegedly identified Entertainment One North America as its provider of the Film, the listed address shows Entertainment One's address in Canada, not the United States.[20] (*See* Dkt. No. 43.) The copyright notice for the Film purchase identifies "2019 Google LLC," but not its operation in the United States. Mahon alleges that Google LLC is a "multinational technology company," which appears to acknowledge that it operates in multiple countries. (Alphabet SAC ¶ 8.) Last, Mahon includes no allegations at all against Google's parent company, Alphabet. Thus, the allegations fail to render plausible that Google or Alphabet exported the Film from the United States. Accordingly, this claim is dismissed.

#### B. Contributory Copyright Infringement

As with YouTube, Mahon pleads no facts to suggest that Alphabet materially contributed to another party's infringement. Accordingly, this claim is dismissed for failure to allege any supporting facts.

//

---

[19] The Alphabet defendants include Alphabet Inc., Google LLC, Google Play, and Does 1-13. Alphabet moves to strike Alphabet Inc. and Google Play. Because the Court dismisses the complaint, the motion to strike is moot.

[20] While Alphabet did not identify Entertainment One UK, Ltd. as its provider of the Film copy, there is nothing suspicious about obtaining a film from Entertainment One UK, Ltd.'s parent company, which is based in Canada, for distribution in Ireland and Europe.

17

1    For the foregoing reasons, the Court **GRANTS** Alphabet's motion to dismiss the complaint. Given the repeated failure to cure the deficiencies identified in the previous motion to dismiss order, and no proffer that leave would be fruitful, no leave to amend is granted. *See Loos*, 762 F.3d at 890. Since there are no jurisdictional issues raised, jurisdictional discovery would not cure the defects here.

**VI.    APPLE'S MOTION TO DISMISS**

In case number 20-1534 against the Apple defendants,[21] ADI moves to dismiss for lack of personal jurisdiction. The Court previously granted dismissal of ADI because Mahon alleges that it is an Irish company with no presence in the United States. (Omnibus Order at 27:10-26.) In response, Mahon added allegations that (1) Apple's Media Services Terms and Conditions state that a purchase in Ireland constitutes a transaction with Apple, (2) ADI is Apple's alter ego, (3) Apple owns 100% interest in ADI, and ADI operates its online business in Ireland, (4) Mahon's purchase on iTunes accrued profit to Apple, and (5) Apple received copies of the Film directly from Entertainment One US LP and provided them to ADI, among other allegations.

The Court has carefully reviewed the parties' briefs and added allegations and concludes that Mahon fails to allege personal jurisdiction over ADI. The basic problem for Mahon is that even if the Court assumes that all of his allegations are true, that would not establish that ADI had done anything wrong in this district because the allegations relate to ADI's activities in Ireland. Mahon appears to recognize as much by stating that "Defendants['] strategy is to get ADI's claim dismissed and then claim that Apple did nothing wrong because no sales took place in the United States." (Case No. 20-1534, Dkt. No. 52 at 8:19-21.) But if that is the case, having ADI in the action would not help the matters. On the contrary, Mahon reasonably alleges that "Entertainment One US LP provided [the Film] directly to Apple based in California and in turn, Apple provided it to ADI." (*Id.* at 10:10-12.)

---

[21] The Apple defendants include Apple Inc., Apple Inc. d/b/a iTunes, Apple Inc. d/b/a iTunes Store, ADI, and Does 1-15. This motion concerns only ADI; the other two defendants have filed an answer. (*See* Case No. 20-1534, Dkt. No. 51.)

Thus, Mahon's own allegations confirm that his case is against Apple, the California company that he alleges committed infringement in its home district of California, not ADI, the Irish company that undertook related, but noninfringing, activities in Ireland. To be clear: Mahon may still seek discovery from Apple regarding the materials it provided to ADI, if they are relevant to this action.[22] But at this stage, it is simply implausible that Apple's Irish subsidiary would have reached into this district to commit infringement, instead of acting through the parent company that is already based here. Accordingly, the Court **DISMISSES** Mahon's claims against ADI for lack of personal jurisdiction with prejudice. Jurisdictional discovery is denied for lack of colorable basis.

**VII.   CONCLUSION**

For the foregoing reasons, the Court **ORDERS AS FOLLOWS:**

1. Mainsail's motion is **GRANTED** with respect to the illicit trafficking and fraud claims, with leave to amend, but **DENIED** with respect to the contributory copyright infringement and conversion. The Court further construes the claims to include vicarious and willful copyright infringement.

Within twenty-one (21) days, Mahon shall file an amended complaint or shall file a notice that he stands on the complaint as modified by this Order. Defendants shall file a response within twenty-one (21) days of Mahon's filing. To the extent an amended complaint is filed, defendants shall not reassert any argument already addressed by the Court or which could have been raised to date.

2. YouTube's motion is **DENIED** with respect to the direct infringement claim and **GRANTED** with respect to the contributory infringement claim without leave to amend. Defendants shall file a response within twenty-one (21) days of Mahon's filing.

3. Alphabet's motion is **GRANTED** without leave to amend. The clerk is ordered to close case number 20-cv-01530.

---

[22] At the hearing for these motions, Mahon claimed that recent discovery shows that Apple exported copies of the Film to ADI in Ireland. If true, that is plausible evidence of infringement by Apple, but not by ADI, because receiving unauthorized copies abroad does not state a claim for infringement under United States copyright law.

19

1     4. ADI's motion is **GRANTED** without leave to amend.  The clerk is ordered to terminate

2  ADI as a defendant.

3     The Court advises plaintiff that the District Court has produced a guide for self-represented

4  or *pro se* litigants called *Representing Yourself in Federal Court: A Handbook for Pro Se*

5  *Litigants*, which provides instructions on how to proceed at every stage of a case, including

6  discovery, motions, and trial.  It is available electronically online, free of charge, on the District

7  Court's webpage for pro se litigants (https://www.cand.uscourts.gov/pro-se-litigants/).

8     The Court also advises plaintiff that assistance is available through the Legal Help

9  Center.  Parties can make an appointment to speak with an attorney who can provide basic legal

10 information and assistance.  The Help Center does not see people on a "drop-in" basis, and will

11 not be able to represent parties in their cases.  There is no charge for this service.  To make an

12 appointment with the Legal Help Center, plaintiff may call 415-782-8982 or email

13 federalprobonoproject@sfbar.org.  The Help Center's website is available at

14 *https://cand.uscourts.gov/legal-help*.

15

16    **IT IS SO ORDERED.**

17

18 Dated: November 17, 2020

19                              _____
                                **YVONNE GONZALEZ ROGERS**
                                **UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California